UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ANNA PEREZ,** *as representative of the* *estate of Jose Antonio Perez,* | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | CIVIL ACTION NO. 3:18-CV-2948-B |
| **ZTE (USA), INC. and METROPCS** **TEXAS, LLC,** | § § § | |
| **Defendants.** | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff Anna Perez's Motion to Apply New Mexico Law (Doc. 52). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## I.

## BACKGROUND[1]

This products liability case involves an allegedly defective cell phone that caught fire. On November 8, 2017, Jose Antonio Perez, a citizen of New Mexico, plugged in his cell phone to charge and then fell asleep. Doc. 37, First Am. Compl., ¶¶ 1, 9. He later awoke and discovered his bed had caught fire due to the overheating of his cell phone. *Id.* ¶ 9. As a result of the fire, Mr. Perez suffered severe burns, which prevented him from walking for any substantial period without assistance. *Id.* Further, after the fire, Mr. Perez stayed in the hospital or a skilled nursing unit "until just shortly before his death." *Id.*

---

[1] The Court draws the facts from Plaintiff Anna Perez's allegations in her First Amended Complaint (Doc. 37). Unless otherwise indicated, each allegation is denied by Defendants due to a lack of knowledge.

-1-

Mr. Perez purchased this cell phone on October 14, 2017, from Tomorrow Talk LLC, a retailer of Defendant MetroPCS Texas, LLC that maintains store locations throughout Albuquerque, New Mexico. *Id.* ¶ 10.[2] It is undisputed that Defendant MetroPCS was formed under the laws of Delaware but maintains its principal place of business in Texas. Doc. 37, First Am. Compl., ¶ 3; Doc. 45, Def. MetroPCS's Answer, ¶ 3. Further, the parties agree that Mr. Perez's cell phone was manufactured by Defendant ZTE (USA) Inc., a corporation organized under New Jersey law that maintains its principal place of business in Texas. Doc. 37, First Am. Compl., ¶ 2; Doc. 44, Def. ZTE's Answer, ¶ 2.

As Mr. Perez is now deceased, Plaintiff Anna Perez, a citizen of New Mexico, brought this action on behalf of his estate. Doc. 37, First Am. Compl., ¶ 1. Plaintiff filed the action on November 2, 2018, and three days later, Defendant MetroPCS removed the action to this Court. *See* Doc. 1, Notice of Removal, 1.

In her operative complaint, Plaintiff brings products liability claims against Defendant ZTE—specifically, Plaintiff claims Mr. Perez's cell phone was defectively designed and lacked adequate warnings. Doc. 37, First Am. Compl., ¶¶ 21–27. Plaintiff also brings claims against Defendant ZTE for breach of the implied warranties of fitness and merchantability, negligence, and negligence per se. *Id.* ¶¶ 30–32, 34–38. Additionally, Plaintiff seeks to hold Defendant MetroPCS liable as a seller of the allegedly defective cell phone. *Id.* ¶¶ 41–44. Moreover, Plaintiff alleges that

---

[2] Defendant MetroPCS does not dispute this October 14, 2017, sale, nor does it dispute that Tomorrow Talk LLC is one of its New Mexico retailers. Doc. 45, Def. MetroPCS's Answer, ¶ 10.

under New Mexico law, Defendants should be held jointly and severally liable, as well as strictly liable, for their conduct. *Id.* ¶ 46.

On April 28, 2020, Plaintiff filed her Motion to Apply New Mexico Law (Doc. 52). Defendants responded, and, upon the Court's request, filed a supplemental response brief. *See* Doc. 59, Defs.' Resp.; Doc. 60, Order; Doc. 61, Defs.' Suppl. Resp. Thereafter, Plaintiff filed her reply brief (Doc. 64). Thus, Plaintiff's motion is now ripe for review.

## II.

## LEGAL STANDARD

Choice of law is a threshold inquiry in diversity cases. *See Faloona by Fredrickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) ("At the threshold in this diversity jurisdiction case, we must determine applicable law by applying Texas choice-of-law rubrics." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941))). When sitting in diversity jurisdiction, a federal court must apply the choice-of-law rules of the forum state—in this case, Texas. *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citing *Klaxon Co.*, 313 U.S. at 496).

Before engaging in a choice-of-law analysis, a Texas court first must determine whether Texas law is, in fact, inconsistent with other potentially applicable law. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984), *superseded by* Tex. Civ. Prac. & Rem. Code §§ 33.001–.004. If the laws are consistent, a court need not undertake a choice-of-law analysis, and Texas law will govern the dispute. *See Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 377–78 (Tex. App.—Fort Worth 2003, pet. denied). The party seeking application of the laws of a state other than Texas bears the burden of demonstrating that Texas law conflicts with the other state's law. *Playboy*

*Enters. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013) (per curiam) (citations omitted).

Where the potentially applicable laws are inconsistent, Texas courts decide choice-of-law issues by using the "most significant relationship" test set forth in the Second Restatement of Conflict of Laws ("Restatement"). *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003) (citing *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000)).

The Court applies the significant relationship test issue-by-issue. *See Hooper v. Marriott Int'l, Inc.*, 979 F. Supp. 2d 735, 738–39 (N.D. Tex. 2013) (citing, *inter alia*, *Webb v. Rodgers Mach. Mfg. Co.*, 750 F.2d 368, 374 n.10 (5th Cir. 1985)). Thus, it "is not required to apply the laws of a single state to all the issues raised within a case." *Id.* at 738. In conducting the significant relationship test, the Court must "apply the significant relationship guidelines of Section 6(2) [of the Restatement] and any other specific sections applicable to the substantive law at issue." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 443 (Tex. 2007) (citations omitted); *see also Ins. Co. of Pa. v. Neese*, 407 S.W.3d 850, 853–54 (Tex. App.—Dallas 2013, no pet.) ("Texas courts have often applied more specific sections of the Restatement to address particular choice of law issues." (citation omitted)).

Section 146 of the Restatement, which governs personal injury actions, states:

> the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) Conflict of Laws § 146 (Am. Law Inst. 1971); *see also* Restatement (Second) Conflict of Laws § 156 (Am. Law Inst. 1971) (stating that the law applicable to whether an actor's conduct is tortious "will usually be the local law of the state where the injury occurred").

Defendants contend § 146 has not been adopted in Texas and thus is irrelevant to the Court's analysis. Doc. 59-1, Defs.' Resp., 7–8 & 8 n.3. Based on a review of the caselaw, the Court disagrees: multiple Texas courts have applied § 146 to determine choice-of-law issues. *See, e.g.*, *Dunn v. Madera*, 2006 WL 3734210, at \*4–5 (N.D. Tex. Dec. 18, 2006); *Enter. Prod. Partners, L.P. v. Mitchell*, 340 S.W.3d 476, 480 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 285 (Tex. App.—Beaumont 2019, no pet.); *Perkins v. Dynasty Grp. Auto*, 2003 WL 22810452, at \*3 (Tex. App.—El Paso Nov. 25, 2003, no pet.).[3]

Thus, § 146 applies to this dispute, and it creates a "presumption in favor of the law of the state where the injury occurred . . . ." *Enter. Prod. Partners*, 340 S.W.3d at 480; *see Gooch v. Packaging Corp. of Am., Inc.*, 2019 WL 3219224, at \*4 (S.D. Tex. July 17, 2019) (citations omitted).

Moreover, § 146 refers to § 145, the Restatement provision governing tort actions generally. *See, e.g.*, § 146 cmt. c. Section 145 applies the significant relationship test to tort actions generally, and it instructs courts to consider four factors: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicil, residence, nationality, place

---

[3] Additionally, application of § 146 remains consistent with the Texas Supreme Court's rejection of the lex loci delicti rule and adoption of the significant relationship test. *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). Unlike the lex loci delicti rule, which mandated application of the law of the state of injury, *see id.* at 313, § 146 creates only a presumption in favor of the state of injury, which may be overcome if another state has a more significant relationship to the dispute.

of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." § 145(2).

Finally, the standards in §§ 145 and 146 "incorporate by reference the principles stated in § 6 of the Restatement." *Yelton v. PHI, Inc.*, 669 F.3d 577, 580 (5th Cir. 2012); *see* § 146. Section 6(1) first instructs the Court, "subject to constitutional restrictions," to "follow a statutory directive of its own state on choice of law." Restatement (Second) Conflict of Laws § 6(2) (Am. Law Inst. 1971). In the absence of a statutory directive, § 6(2) sets forth seven principles for the Court to consider in its choice-of-law determination: (1) "the needs of the interstate and international systems"; (2) "the relevant policies of the forum"; (3) "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue"; (4) "the protection of justified expectations"; (5) "the basic policies underlying the particular field of law"; (6) "certainty, predictability and uniformity of result"; and (7) "ease in the determination and application of the law to be applied." § 6(2).

"Under this hierarchy, the factors in section 6(2) . . . do not come into play if there is statutory guidance that the [local] law is intended to govern the transaction." *Citizens Ins. Co.*, 217 S.W.3d at 443. Accordingly, the Court only determines the outcome of the significant relationship test upon concluding that there is no statutory directive to govern the choice-of-law issue. *See Utica Mut. Ins. Co. v. Hickman*, 2000 WL 1593640, at *2 (N.D. Tex. Oct. 24, 2000) (citations omitted).

In sum, this Court must apply the law of the state where the injury occurred, unless Texas has a statutory directive stating otherwise or, through application of the § 6 principles, as guided by the factors in §145, the Court concludes that another state has a more significant relationship to the

issue at hand. *See Enter. Prod. Partners*, 340 S.W.3d at 480–81; *Utica Mut.*, 2000 WL 1593640, at *2.

## III.

## ANALYSIS

As a preliminary matter, the Court turns to Defendants' suggestion that the Court should defer ruling on choice-of-law issues until the close of discovery. *See* Doc. 59-1, Defs.' Resp., 23. In support of this request, Defendants contend that absent full discovery, the Court will lack the facts necessary to apply one § 145 factor: "the place where the conduct causing the injury occurred[.]" Doc. 61, Defs.' Suppl. Resp., 1. Defendants argue that based on the operative complaint, this factor would point to application of Texas law, but Defendants urge the Court to wait to rule on choice of law until "the record is established" so that the Court can "give proper weight to the actual facts and evidence . . . ." *Id.* at 3.

Plaintiff, on the other hand, contends that additional discovery is unnecessary, as the relevant "facts are readily ascertainable . . . ." Doc. 64, Pl.'s Reply, 17.

The Court agrees with Plaintiff. Defendants concede that additional discovery will have a bearing on only one of the applicable Restatement factors in the Court's choice-of-law analysis—the state of tortious conduct. With respect to this factor, the Court concludes that Plaintiff alleges tortious conduct occurring in both New Mexico and Texas. *See infra* Section III.A.2.a.ii. The Court has no reason to believe that after additional discovery, Defendants will discern that all relevant tortious conduct occurred in Texas—especially given that the parties have had over a year to conduct discovery in this Court. *See generally* Doc. 31, Scheduling Order.

Additionally, as Defendants will see below in the Court's determination of the choice-of-law issues, the place-of-conduct factor receives little weight in the Court's analysis. Indeed, the very issue in which the place-of-conduct factor receives most weight—the issue of strict liability—pertains to the strict liability of Defendant MetroPCS as a seller. And Defendant MetroPCS does not deny that Mr. Perez purchased the allegedly defective cell phone from one of Defendant MetroPCS's retailers in New Mexico—not Texas. Doc. 45, Def. MetroPCS's Answer, ¶ 10. Thus, in the context of the strict liability issue, the state of tortious conduct is Texas. *See infra* Section III.A.2.a.ii.

Accordingly, the Court rejects Defendants' attempt to delay a choice-of-law ruling based on the discovery of hypothetical facts that will likely have no bearing on the choice-of-law issues now before the Court.

The Court thus turns to the merits of Plaintiff's choice-of-law motion. Plaintiff contends that New Mexico law should govern this dispute in its entirety, *see* Doc. 53, Pl.'s Mot., 1, whereas Defendants urge the Court to apply Texas law. Doc. 59-1, Defs.' Resp., 3–4. Thus, the Court limits its choice-of-law determination to whether New Mexico or Texas law applies to the issues in this case.

Plaintiff raises five potential conflicts between Texas and New Mexico law: (1) Plaintiff's ability to recover in the event of a finding of comparative fault; (2) whether Plaintiff can prove and recover medical expenses not actually paid or incurred; (3) the elements for imposing strict liability upon a seller in a products liability action; (4) the effect of compliance with industry standards on Defendants' liability; and (5) liability for Plaintiff's breach-of-implied-warranty claims. *See* Doc. 53, Pl.'s Mot., 5–6.

Because the Court conducts the choice-of-law analysis on an issue-by-issue basis, and Plaintiff has the burden of showing a conflict exists, the Court addresses each issue by examining: (1) whether there is an actual conflict between Texas and New Mexico law on the issue; and (2) if so, which state's law governs.

A.   *Effect of Comparative Fault*

The Court first turns to whether Texas or New Mexico law determines the effect of comparative fault on the liability of Defendants. *See* Doc. 53, Pl.'s Br., 5.

1.   <u>Whether a conflict exists</u>

There is a conflict between Texas and New Mexico law on this issue. Under Texas law, in "any cause of action based on tort in which a defendant . . . is found responsible for a percentage of the harm for which relief is sought," "a claimant may not recover damages if his percentage of responsibility is greater than 50 percent." Tex. Civ. Prac. & Rem. Code §§ 33.002(a), 33.001. In contrast, New Mexico law imposes no limit on recovery based on a claimant's degree of fault. *See* N.M. Stat. § 41-3A-1 (imposing no limit on a plaintiff's damages based on the plaintiff's degree of fault); *see also Kellum v. Bernlillo Cty.*, 2015 WL 12861334, at *2 (D. N.M. June 12, 2015) (citing N.M. Stat. § 41-3A-1).[4]

---

[4] Defendants suggest that there is no conflict because the issue of comparative fault is "completely theoretical" at this stage of litigation, and the Court need not resolve the issue until after trial. Doc. 59-1, Defs.' Resp. Br., 13. But the Court rejects this argument—courts applying Texas law often rule upon the law governing recovery before a final decision on the merits. *See, e.g., Sulak v. Am. Eurocopter Corp.*, 901 F. Supp. 2d 834, 846 (N.D. Tex. 2012) (resolving choice-of-law issues, including comparative negligence, before trial); *Black v. Toys R US-Delaware, Inc.*, 2010 WL 4702344, at *7–17 (S.D. Tex. Nov. 10, 2010) (same); *Deep Marine Tech., Inc. v. Conmaco/Rector, L.P.*, 515 F. Supp. 2d 760, 771–72 (S.D. Tex. 2007) (resolving choice-of-law issue regarding exemplary damages before trial); *but see Hooper*, 979 F. Supp. 2d at 741 (addressing choice of law for liability issues pretrial but declining to address choice of law for remedies issues).

Because Texas and New Mexico law conflict on the effect of comparative fault, the Court now turns to the determination of the applicable law.

2.   Which state's law governs

Applying the significant relationship test, the Court concludes that New Mexico law governs this issue.

First, the Court examines whether there is a statutory directive under Texas law governing this choice-of-law issue. *See Citizens Ins. Co.*, 217 S.W.3d at 443. Defendants suggest that Texas's comparative fault statute is a statutory directive governing the issue. Doc. 59-1, Defs.' Resp., 13–14. In relevant part, the statute reads: "This chapter applies to . . . any cause of action based on tort in which a defendant . . . is found responsible for a percentage of the harm for which relief is sought[.]" Tex. Civ. Prac. & Rem. Code § 33.002(a)(1). Defendants contend that by stating Chapter 33 applies to "*any*" cause of action, the "Legislature intended the statute to apply as broadly as possible and mandates the application of Texas law to the issue." Doc. 59-1, Defs.' Resp., 13–14 (quoting § 33.002(a)(1)) (emphasis in original).

The Court disagrees. Though the comments to § 6(1) of the Restatement suggest that a statutory directive need not explicitly address choice of law, the Court still must determine that "the legislature intended that the statute should be applied to the out-of-state facts involved . . . ." *See* § 6 cmt. b. Here, Defendants have not pointed to, nor has the Court found, any authority suggesting that the Texas Legislature intended for its proportionate responsibility scheme to apply to any tort cause of action—regardless of the facts involved—in the event of a conflict of laws.[5]

---

[5] Defendants rely upon *Smith v. Cudd Pressure Control Inc.* to suggest that "Texas courts have held Chapter 33 is a statutory directive which determines the resolution of conflicts of law." Doc. 61, Defs.' Suppl.

Since there is no statutory directive governing this issue, the Court turns to § 146. Under § 146, "the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties . . . ."[6]

But in the context of compensatory damages, the Texas Supreme Court has indicated that the state of injury and the state of the tortious conduct are less important; instead, "the most important contacts . . . will usually be the 'ones with the most direct interest in the plaintiff's monetary recovery and/or the most direct in protecting the defendant against financial hardship.'" *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000) (citations omitted).

Based on this reasoning, the presumption set forth in § 146 carries little force in the choice-of-law analysis for issues related to compensatory damages. Rather, the Court will focus on Texas's and New Mexico's interests in ensuring Plaintiff's recovery and protecting Defendants. With this guidance in mind, the Court applies the § 145 factors below.

---

Resp., 3 (citing 126 S.W.3d 106, 109 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)). But the *Smith* court did not address whether Chapter 33 served as a general statutory directive for choice-of-law purposes. *See Smith*, 126 S.W.3d at 109–11. Rather, the *Smith* court held that after the parties' pretrial agreement that Texas law applied to the case, and the jury's finding of comparative fault under Chapter 33, the trial court was required to apply Chapter 33's settlement credit statute. *Id.* at 109, 111 (noting that under § 33.002(a), Chapter 33 "expressly applies to 'any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm'").

[6] Section 164, which governs contributory fault, may also be relevant here. *See* Restatement (Second) Conflict of Laws § 164 (Am. Law Inst. 1971) (stating that "[t]he law selected by application of the rule of § 145 determines whether contributory fault on the part of the plaintiff precludes his recovery in whole or in part" and that "[t]he applicable law will usually be the local law of the state where the injury occurred"). By following § 146, the Court will apply both the § 145 factors and a presumption in favor of the state of injury. Thus, the Court's analysis already incorporates § 164.

a.      *Section 145 factors*

i.      Place of injury

Mr. Perez's injuries took place in New Mexico; thus, this factor favors application of New Mexico law.[7]

ii.      Place where conduct causing injury occurred

Overall, this factor favors New Mexico in some respects and Texas in others. Plaintiff argues that the conduct causing Mr. Perez's injuries occurred in New Mexico because that is where he charged his phone. Doc. 53, Pl.'s Mot., 6. Defendants, however, point out that at trial, Plaintiff may allege a range of bad acts by Defendants, and both Defendants maintain their principal places of business in Texas. *See* Doc. 59-1, Defs.' Resp., 10–11; Doc. 61, Defs.' Suppl. Resp., 4–5. Thus, according to Defendants, "[t]o the extent Plaintiff alleges bad corporate conduct, failure to warn or provide adequate instructions, and that dangers of devices overheating were known, Texas is directly implicated." Doc. 61, Defs.' Suppl. Resp., 5.

Applying the place-of-conduct factor to each of Plaintiff's theories of recovery, the Court concludes that this factor implicates both New Mexico and Texas.

To the extent Plaintiff alleges defective design of the cell phone, *see* Doc. 37, First Am. Compl., ¶¶ 19–24, the relevant conduct "occurred where [the cell phone] was designed and manufactured[.]" *See Sulak*, 901 F. Supp. 2d at 844 (citation omitted). Here, the parties agree that the phone was not designed or manufactured in the United States. Doc. 53, Pl.'s Mot., 6 n.5; Doc. 61, Defs.' Suppl. Resp., 2. Thus, this factor is neutral with respect to Plaintiff's defective design claim.

---

[7] Defendants do not dispute this fact in their brief in response to Plaintiff's choice-of-law motion. *See generally* Doc. 59-1, Defs.' Resp.

-12-

But for Plaintiff's failure-to-warn theory, *see* Doc. 37, First Am. Compl., ¶ 34, the relevant state of conduct could be Texas or New Mexico. *See Nat'l Union Fire Ins. Co. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408–09 (5th Cir. 2012) (concluding that the defendant's failure to warn the plaintiff of a helicopter defect "could have occurred in Texas just as well as in Hawaii" because the helicopter was maintained in Hawaii "using parts and technical bulletins that . . . passed through [the defendant's] facilities in Texas"). Specifically, Mr. Perez's use of the cell phone in New Mexico[8] suggests that the place-of-conduct factor favors New Mexico. On the other hand, given that Defendants operate from Texas, their alleged failure to warn Plaintiff relates to Texas as well. Thus, the place-of-conduct factor points to both New Mexico and Texas with respect to Plaintiff's failure-to-warn claim.

Next, to the extent Plaintiff seeks punitive damages based on Defendants' knowledge of a defect, *see* Doc. 37, First Am. Compl., ¶¶ 49–51, the relevant state is likely Texas, where Defendants made business decisions. *See Black*, 2010 WL 4702344, at *11; *see also* Doc. 61-1, Defs.' App., 3–4, 6–7 (Exs. A & B) (identifying Texas as the nerve center of each Defendant's companies).

Finally, insofar as Plaintiff seeks to hold Defendant MetroPCS liable for selling the cell phone to Mr. Perez, this factor favors New Mexico, as Mr. Perez purchased the cell phone there. *See* Doc. 37, First Am. Compl., ¶¶ 10, 39–44; Doc. 45, Def. MetroPCS's Answer, ¶ 10.

Overall, then, the place-of-conduct factor favors both New Mexico and Texas.

---

[8] Again, Defendants do not contest this fact in their response brief. *See generally* Doc. 59-1, Defs.' Resp.

### iii.   Location of the parties

This factor, especially weighty in the context of damages, *see Torrington Co.*, 46 S.W.3d at 849 (citations omitted), favors both New Mexico and Texas.

Plaintiff is a citizen of New Mexico; further, Mr. Perez was a citizen of New Mexico. Doc. 37, First Am. Compl., ¶ 1.[9] Thus, New Mexico has a "direct interest in [Plaintiff's] monetary recovery . . . ." *Torrington Co.*, 46 S.W.3d at 849 (citations omitted).

Nevertheless, both Defendants maintain their places of business in Texas. Doc. 37, First Am. Compl., ¶¶ 2–3.[10] So Texas has a "direct interest . . . in protecting [Defendants] against financial hardship." *Torrington Co.*, 46 S.W.3d at 849 (citations omitted).

In sum, because the parties are located in both Texas and New Mexico, this factor favors both states.

### iv.   Place where relationship of the parties, if any, is centered

This factor is neutral. Plaintiff argues that the relationship of the parties is centered in New Mexico because that is where Mr. Perez purchased the cell phone, Doc. 53, Pl.'s Br., 7, while Defendants argue that Plaintiff lacks a relationship with Defendants. Doc. 61, Defs.' Suppl. Resp., 6.

---

[9] Defendants do not dispute the citizenship of Plaintiff or Mr. Perez in their response brief. *See generally* Doc. 59-1, Defs.' Resp.

[10] Plaintiff suggests that Defendant MetroPCS's principal place of business, for choice-of-law purposes, is Washington, because Defendant MetroPCS's sole LLC member is a Washington citizen. *See* Doc. 53, Pl.'s Mot., 6–7; Doc. 64, Pl.'s Reply, 14 n.9. But this is not what Plaintiff indicated in her operative complaint. *See* Doc. 37, First Am. Compl., ¶ 3. Further, Defendants have provided an affidavit indicating that Defendant MetroPCS's nerve center is in Texas. *See* Doc. 61-1, Defs.' App., 6 (Ex. B). Thus, the Court finds that Texas qualifies as a "place of business" of Defendant MetroPCS for choice-of-law purposes. *See* § 145(2).

Because Mr. Perez and Defendants had no relationship before Mr. Perez's purchase of the cell phone, the Court concludes that the state of the parties' relationship lacks significance. *See Allison v. ITE Imperial Corp.*, 928 F.2d 137, 142 n.5 (5th Cir. 1991) (explaining that this factor does not always apply under the facts of the case); *Denman by Denman v. Snapper Div.*, 131 F.3d 546, 549–50 (5th Cir. 1998) (applying *Allison* and concluding that although the defendant sold a product to the plaintiff, the parties "had no pre-existing relationship" and thus this factor was "duplicative of the place of injury"). Consequently, the Court finds this factor neutral in the dispute at hand.

b.    *Section 6 principles*

Overall, although the § 145 factors slightly favor application of New Mexico law to the comparative fault issue, the most important contacts are those of the states with an interest in Plaintiff's recovery and the protection of Defendants. *See Torrington Co.*, 46 S.W.3d at 849. Because those states include both Texas and New Mexico, the Court must also look to the principles outlined in § 6. *See Sulak*, 901 F. Supp. 2d at 844 (citing, *inter alia*, *Allison*, 928 F.2d at 141).

The seven principles in § 6 include: (1) "the needs of the interstate and international systems"; (2) "the relevant policies of the forum"; (3) "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue"; (4) "the protection of justified expectations"; (5) "the basic policies underlying the particular field of law"; (6) "certainty, predictability and uniformity of result"; and (7) "ease in the determination and application of the law to be applied." § 6(2).

After applying these principles, the Court concludes that New Mexico law should govern the comparative fault issue.

First, the Court notes that New Mexico and Texas have similar policy interests on this issue. New Mexico has an interest in holding every party responsible for breaching the duty to exercise ordinary care. *See Heath v. La Mariana Apartments*, 151 P.3d 903, 910 (N.M. Ct. App. 2006). This interest is implicated here, given that Plaintiff, a New Mexico citizen, seeks to hold Defendants liable for the injuries of Mr. Perez, another New Mexico citizen. *Cf. Price v. Takata Corp.*, 2008 WL 11320096, at *2 (D. N.M. Aug. 14, 2008) (explaining that New Mexico lacked a compelling interest in applying its comparative negligence theory where the plaintiff did not live in New Mexico at the time of the accident, nor did the accident take place in New Mexico) (citation omitted).

Likewise, Texas has a similar policy rationale underlying its proportionate responsibility scheme—ensuring a plaintiff can still recover despite some fault. *See Dugger v. Arredondo*, 408 S.W.3d 825, 832 (Tex. 2013) (citation omitted). Moreover, though Texas law bars recovery if the plaintiff bears the majority of fault, Defendants have not pointed the Court to any overriding policy interest behind this rule. Accordingly, both New Mexico's and Texas's negligence schemes are designed to ensure a plaintiff's recovery.

Although Texas and New Mexico have similar policy interests, the Court concludes that New Mexico's policy interest dominates here. The comments to § 6 are instructive on weighing the interests at issue. Comment f states that generally, "it is fitting that the state whose interests are most deeply affected should have its local law applied." § 6 cmt. f. Further, the Court should look to "[t]he content of the relevant local law rule of a state . . . in determining whether this state is the state with the dominant interest." *Id.* "[F]or example, application of a state's statute . . . which would absolve the defendant from liability could hardly be justified on the basis of this state's interest in the welfare of the injured plaintiff." *Id.*

-16-

Here, though Texas's statutory scheme will not necessarily absolve Defendants of liability, its potential to do so is the source of conflict between Texas and New Mexico law on the comparative fault issue. *See supra* Section III.A.1. Thus, the Court can "hardly" justify the conclusion that Texas's interest in ensuring Plaintiff's recovery overrides New Mexico's similar interest—Texas's interest in protecting plaintiffs will not be served here. Accordingly, application of § 6's policy-based principles indicates that New Mexico law should govern the comparative fault issue.

Further, none of the remaining § 6 principles compel a different conclusion. While Defendants may have expected Texas law to govern the dispute, and thus application of Texas law may be more predictable, the protection-of-expectations and predictability factors are "of diminished importance" where, as here, the parties did not likely contemplate the legal consequences of their actions. *See Sulak*, 901 F. Supp. 2d at 846 (citing comments to § 6). Nor do "the needs of the interstate and international systems," § 6(2), override New Mexico's interest with respect to the comparative fault issue: the international system is not implicated here, and the Court's application of New Mexico law will not disrupt the interstate system. *See* § 6 cmt. d. Finally, any concern regarding the "ease in the determination and application of the law to be applied," § 6(2), fails to overcome New Mexico's interest in this issue. Although the Court is less familiar with New Mexico law, the Court is capable of applying it. *See id.*; *see also* § 6 cmt. j ("This policy should not be overemphasized . . . .").

As a result, the Court **GRANTS** Plaintiff's motion to apply New Mexico law to the comparative fault issue and holds that New Mexico law governs the effect of a finding that Mr. Perez bears more than fifty-percent of the liability in his case.

B.    *Recovery of Medical Expenses*

Next, the Court examines whether Texas or New Mexico law dictates the amount of Plaintiff's recoverable medical expenses and, relatedly, whether Plaintiff can offer evidence of those expenses. *See* Doc. 53, Pl.'s Mot., 6.

1.    Whether a conflict exists

The Court concludes that it lacks adequate briefing to determine whether Texas and New Mexico law conflict on this issue. Under Texas law, "recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant." Tex. Civ. Prac. & Rem. Code § 41.0105. Accordingly, a plaintiff may not offer evidence of medical expenses "that a provider is not entitled to be paid." *Haygood v. De Escabedo*, 356 S.W.3d 390, 398–99 (Tex. 2011).[11] New Mexico law, on the other hand, may permit evidence and recovery of medical expenses, whether or not actually paid. *See Pipkins v. TA Operating Corp.*, 466 F. Supp. 2d 1255, 1257 (D. N.M. 2006) (making *Erie* guess).

Because the Court finds that further briefing on this issue is necessary, the Court **DENIES** Plaintiff's motion to apply New Mexico law to this issue **WITHOUT PREJUDICE** to re-asserting an actual conflict at the summary-judgment stage of proceedings. Should this choice-of-law issue arise again at summary judgment, the Court would like the parties to address both: (1) whether there is an actual conflict, and (2) how each state's policy interests are affected by the Court's resolution of the issue.

---

[11] By turning to this issue, the Court does not suggest that state law governs the form of evidence required to prove medical expenses—that is a "purely procedural" matter and thus is governed by federal law. *Haygood*, 356 S.W.3d at 397; *see Sulak*, 901 F. Supp. 2d at 838 (citations omitted).

C.      *Strict Liability*

Now, the Court examines whether Texas or New Mexico law determines a seller's strict

liability in a products liability action. *See* Doc. 53, Pl.'s Mot., 6.

1.      Whether a conflict exists

There is an actual conflict between Texas and New Mexico law on the strict liability of a

seller. Texas law imposes strict liability on a seller only if specific conditions are met. *See* Tex. Civ.

Prac. & Rem. Code § 82.003; *Lowe v. L.G. Elecs., U.S.A., Inc.*, 2019 WL 7757891, at *2 (N.D. Tex.

Sept. 23, 2019) (noting that generally, "a non-manufacturing seller of an allegedly defective product

is not liable for harm caused by that product" under Texas law). In contrast, New Mexico law

permits strict liability for sellers of a product as long as the product was unreasonably dangerous, the

seller was in the business of selling the product, and the product reached the consumer in an

unchanged condition. *Bellman v. NXP Semiconductors USA, Inc.*, 248 F. Supp. 3d 1081, 1123 (D.

N.M. 2017) (citations omitted) (applying New Mexico law); *Stang v. Hertz Corp.*, 497 P.2d 732, 737

(N.M. 1972) (adopting strict liability). Thus, Texas and New Mexico law conflict on this issue.[12]

2.      Which state's law governs

New Mexico law governs this issue. The Court first addresses whether Texas law contains

a statutory directive governing the choice-of-law issue. *See Citizens Ins. Co.*, 217 S.W.3d at 443.

---

[12] Defendants suggest that by citing only to New Mexico's Uniform Jury Instruction (UJI) 13-1406, Plaintiff has not met her burden of demonstrating a conflict between New Mexico and Texas law. Doc. 59-1, Defs.' Resp. Br., 15. But the Court rejects this argument, given that UJI 13-1406, though not binding precedent, reflects New Mexico law. *See State v. Wilson*, 867 P.2d 1175, 1178 (N.M. 1994) (noting that the Supreme Court of New Mexico's adoption of the uniform jury instructions "establishes a presumption that the instructions are correct statements of law").

With respect to strict liability, Defendants argue that Texas has a statutory directive requiring application of Texas law. Doc. 59-1, Defs.' Resp., 15. Similar to Defendants' statutory directive argument pertaining to comparative fault, Defendants argue here that Texas's statute defining "products liability action" broadly constitutes a choice-of-law directive. *Id.* (citing Tex. Civ. Prac. & Rem. Code § 82.001).

Again, Defendants' argument falls short. Defendants have not provided any authority to support their assertion that the Texas Legislature intends to apply its strict liability statutes to any products liability action, regardless of an interstate conflict of laws. As a result, the Court concludes that there is not a statutory directive requiring the application of Texas's strict liability framework.

Turning to the application of the significant relationship test, the Court's analysis remains nearly identical to that governing the comparative fault issue, in which the Court concluded New Mexico law applies. As explained below, though the analysis varies in two respects, the Court nonetheless concludes New Mexico law governs the strict liability issue, too.

First, since the Court is now analyzing an issue related to liability, rather than damages, the state-of-injury and state-of-conduct factors in § 145 no longer receive less emphasis, and thus § 146's presumption in favor of the state of injury applies. *Cf. Torrington Co.*, 46 S.W.3d at 849 (citations omitted). Given that the state of injury is New Mexico, and New Mexico is the state of tortious conduct with respect to Plaintiff's claim against Defendant MetroPCS premised on the sale of the cell phone, this adjustment in the analysis only strengthens the Court's conclusion that New Mexico law applies.

Second, in accordance with § 6, the Court must again address the policies of each state with respect to the strict liability issue. Texas's strict liability scheme is intended to "provide an equitable

balance between protecting the right of the consumer to sue any party placing a product into the stream of commerce and protecting innocent sellers from the unfairness of the financial burden of establishing the seller's lack of liability." *Mix v. Target Corp.*, 759 F. Supp. 2d 876, 876 (W.D. Tex. 2010) (citation omitted). But New Mexico adheres to the strict liability doctrine "to allow an injured user . . . to recover against a supplier or manufacturer without the requirement of proving negligence." *Trujillo v. Berry*, 738 P.2d 1331, 1333 (Ct. App. 1987) (citation omitted). Thus, while Texas has a legitimate interest in protecting innocent sellers, New Mexico has an interest in ensuring an injured plaintiff may recover from a seller.

Despite these conflicting policies, New Mexico has a greater interest in applying its law with respect to the strict liability of a seller. As discussed in the Court's analysis of the § 145 factors, *see supra* Section III.A.2.a, Plaintiff brings suit on behalf of Mr. Perez— a citizen of New Mexico, injured in New Mexico, by a product sold from a store located in New Mexico. These circumstances, combined with § 146's presumption in favor of the state of injury, lead the Court to conclude that New Mexico has the most significant relationship to Plaintiff's claims of strict liability against Defendant MetroPCS.

So with respect to the issue of strict liability, the Court **GRANTS** Plaintiff's motion and concludes that New Mexico law governs Plaintiff's claims of strict liability against Defendant MetroPCS.

D.      *Effect of Compliance with Industry Regulations*

The Court now analyzes which state's law governs the effect of Defendants' compliance with regulations on Defendants' potential liability. *See* Doc. 53, Pl.'s Mot., 5.

1.      Whether a conflict exists

The Court is not convinced that there is an actual conflict between Texas and New Mexico on this issue. In a products liability action under Texas law, a defendant's compliance with regulations creates a rebuttable presumption that the defendant is not liable, whereas under New Mexico law, compliance is only evidence of acceptability of a risk of injury. *See* Tex. Civ. Prac. & Rem. Code § 82.008; N.M. UJI 13-1408. "In Texas, courts only undertake a choice-of-law analysis if there is a conflict of law that actually affects the outcome of an issue." *Flagship Credit Corp. v. Indian Harbor Ins. Co.*, 481 F. App'x 907, 910 (5th Cir. 2012) (per curiam) (citation omitted).

Here, Plaintiff has not adequately explained whether the differing effect of compliance under Texas and New Mexico law will "actually affect[]" Plaintiff's ability to hold Defendants liable.[13] *See Flagship Credit Corp.*, 481 F. App'x at 910 (citation omitted).

In addition, the Court anticipates that whether this constitutes an actual conflict will become more apparent when the Court has the benefit of a summary-judgment record. Thus, the Court declines to find an actual conflict with respect to the compliance issue and **DENIES** Plaintiff's motion to apply New Mexico law to this issue **WITHOUT PREJUDICE** to re-asserting an actual conflict on this issue at the summary-judgment stage.[14]

---

[13] Plaintiff suggests she need only show a "difference" between Texas and New Mexico law, but this is an oversimplification of Texas law. In the case upon which Plaintiff relies, *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew and Rental Tools, Inc.*, the Texas Supreme Court states that "the party advocating" the application of another state's law has "the burden of establishing that it differ[s] from Texas law . . . ." *See* 246 S.W.3d 42, 53 (Tex. 2008). But the court thereafter states that because this burden was not met, the court would "presume that the *outcome would be no different* under the foreign state's law." *Id.* (emphasis added)

[14] As a result, the Court need not address the parties' arguments pertaining to whether this issue is procedural or substantive. *See, e.g.*, Doc. 59-1, Defs.' Resp. Br., 14–15.

E.     *Breach-of-Warranty Claims*

Finally, the Court addresses whether there is a conflict with respect to Plaintiff's breach-of-implied-warranty claims.

1.     <u>Whether a conflict exists</u>

Plaintiff has not met her burden of demonstrating an actual conflict between Texas and New Mexico law on her warranty claims. As evidence of a conflict between Texas and New Mexico law, Plaintiff states only that "the Texas Supreme Court has noted that warranty claims vary amongst the states." Doc. 53, Pl.'s Br., 6 (citing *Compaq Comput. Corp. v. Lapray*, 135 S.W.3d 657, 673–80 (Tex. 2004)). But this vague assertion does not carry Plaintiff's burden of demonstrating that Texas and New Mexico law are inconsistent.[15] Indeed, the Texas and New Mexico statutes governing Plaintiff's two breach-of-warranty claims are identical. *Compare* Tex. Bus. & Com. Code §§ 2.314, 2.315 *with* N.M. Stat. §§ 55-2-314, 55-2-315 (stating elements for claims of breach of the implied warranties of merchantability and fitness).

Plaintiff, therefore, has not demonstrated an actual conflict of laws with respect to her breach-of-warranty claims, so the Court **DENIES** her motion to apply New Mexico law to these claims and holds that they are subject to Texas law.

---

[15] In her reply brief, Plaintiff attempts to assert new arguments supporting the existence of a conflict. *See* Doc. 64, Pl.'s Reply, 12. But this Court will not consider an argument raised for the first time in a reply brief. *Grace v. Everhome Mortg. Co.*, 2014 WL 11515581, at *6 (N.D. Tex. June 16, 2014) (citation omitted).

## IV.

## CONCLUSION

In sum, based on the Court's application of the Restatement's significant relationship test, New Mexico law governs Plaintiff's ability to recover damages in the event Mr. Perez is found to bear more than fifty-percent of fault, as well as the elements for holding a seller strictly liable in a products liability action. As to Plaintiff's ability to recover and prove medical expenses not actually paid, and the effect of compliance with industry regulations, the Court **DENIES** Plaintiff's motion to apply New Mexico law **WITHOUT PREJUDICE**. With respect to any remaining issues, the Court will apply Texas law. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion (Doc. 52).

**SO ORDERED.**

**SIGNED: July 6, 2020.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-24-